UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TIMOTHY LUCE,

      Plaintiff,

vs.                                          CIVIL NO.:  05-CV-72961-DT

COMMISSIONER OF                    HON. MARIANNE O. BATTANI
SOCIAL SECURITY,                     MAG. JUDGE WALLACE CAPEL, JR.

      Defendant.
_____/

**REPORT AND RECOMMENDATION**

**I.    RECOMMENDATION**

It is recommended that the Court deny Plaintiff's Motion for Summary Judgment, grant Defendant's Motion for Summary Judgment, and enter judgment for Defendant.

**II.    REPORT**

This is an action for judicial review of the Defendant Commissioner's final decision denying Plaintiff's application for disability insurance benefits [DIB].  Plaintiff filed for benefits on July 31, 2002[1], alleging that he has been disabled and unable to work since August 8, 2000, due to bulging discs, osteoarthritis, high blood pressure, heart attacks resulting in stents, and high cholesterol.  (TR 46-48, 58).  The Social Security Administration [SSA] denied benefits initially on October 21, 2002.  (TR 33-38).  A de novo hearing was held on June 7, 2004, before Administrative Law Judge [ALJ] Samuel Rodner.  (TR 284-328).  In a decision dated August 11, 2004, the ALJ found that Plaintiff could perform some light work.  (TR 17-23).  Accordingly, Plaintiff was found not disabled.  (TR

---

[1]Plaintiff signed his application August 7, 2002.  (TR 48).

23).  On June 17, 2005, the Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner.  (TR 5-7).  Plaintiff then made this appeal to district court.

### A.     PLAINTIFF'S TESTIMONY

Plaintiff testified that he has lived in Pinconning, Michigan for five years, and that he lives alone in a single-story home.  (TR 287-88, 305).  He stated that he currently receives food stamps from Bay County and $132 twice a month from the Family Independence Agency [FIA].  (TR 288).  He stated that he has been receiving benefits for about two years and also receives health insurance through Bay County health Plan.  (TR 288-89).  In addition, he stated that although he received a worker's compensation benefit settlement in April 2004, in the amount of $20,000, he only actually "took home"  $16,000.  (TR 289).

Plaintiff testified that he graduated from high school and did not attend college.  Id.  He stated that he is right-handed and five feet, six inches tall.  (TR 289-90).  He approximated his weight at 190 pounds.  (TR 290).  He stated that he has not worked at all since August 8, 2000.  Id.

The ALJ asked Plaintiff whether he could complete the following forty hour per week job: "you could learn to do it very quickly, simple job.  Assume you could alternate between sitting or standing.  You didn't have to lift over 10 pounds."  Id.  Plaintiff stated that he would try, but that he thought he would be limited from the side-effects of his medication, because he is not alert when he takes same.  Id.

In addition, Plaintiff reported that he is still having complications from his triple bypass in January.  (TR 291).  Plaintiff stated that he has been seeing his cardiologist, Dr. Saquib, for approximately one year and that he last saw Dr. Saquib in February 2004.  Id.  Plaintiff stated that he will go back to see Dr. Saquib in six months.  (TR 292).  Plaintiff stated that his heart problem

began in 1994, when he had a heart attack, at which time he was given an injection to stop any clotting. Id.

A year later, Plaintiff stated that he had two stents put in and an angioplasty. Id. While he was having the angioplasty, his artery split open, thus, he explained he had to have a special stent. Id. He stated that he then had a third heart attack on the operating table during he angioplasty, because the doctors had to block off another artery. Id. He stated that his condition improved over the last year, but then worsened, and he had to have a triple bypass. Id. He stated that his doctor still wants to put another stent in, but is waiting until everything else heals. (TR 293).

He explained that after August 8, 2000, his symptoms started up again and included chest pains that were waking him up in the middle of the night. Id. He stated that he also experienced chest pain upon exertion. Id. He stated that the pain was a little different than the first heart attacks. (TR 293-94). He explained that at first he had pains in his left arm, but more recently the pains were in his back and he lost his breath more than the during the first attacks. (TR 294).

Plaintiff stated that prior to the bypass he did not have to do much of anything before he needed to take nitroglycerin. Id. However, since the bypass, although he has had discomfort, he has not had to take nitroglycerin. (TR 294, 296). He stated that Dr. Jones performed the triple bypass and since then he has seen Dr. Moreska. (TR 294-95).

Plaintiff stated that he saw Dr. Brown on April 20, 2004 for his back. (TR 295). He stated that Dr. Brown is a specialist in rehabilitation medicine. Id. Plaintiff stated that he has not had any stress tests since the surgery. (TR 296). He stated that his shortness of breath and back pain have improved since his surgery, but he currently has bone pain from the surgical incision. Id. He stated that if he sleeps the wrong way, it is very uncomfortable. Id.

Plaintiff testified that he was in an automobile accident in January 2000, and continued to work a month after, but his pain from the accident worsened. (TR 296-97). He stated that since the accident, he has constant pain in his lower back on his left side. (TR 297). He stated that currently his back pain on the left side is the same. Id. He stated that is he does a lot of activity during the day, he will have leg pain in the evening. Id. He added that he has a constant "charlie horse" in his upper right leg. Id. He stated that his doctor told him that arthritis was causing the pain. Id.

The ALJ gave the following pain scale: ten would mean a person is bedridden or requires emergency room treatment, "[s]even to nine is severe; four to six is moderate; [and] one to three is mild." (TR 298). Plaintiff estimated that on average his pain is a "[f]ive all the time." Id. He stated that when his pain is the worst he is "completely miserable," and it is an eight. Id. He stated that the last time his pain level was at an eight was three nights prior to the hearing. Id. He explained that it was due to exertion because that day he was with his son out in the yard a lot. (TR 299).

Plaintiff testified that since the accident he has been taking about four Darvocet a day for pain. Id. He clarified that he began taking probably three a day, but his pain worsened. Id. He stated that it was originally prescribed by Dr. Brown, but Dr. Jung, his family physician, is currently the prescribing physician. (TR 300).

Plaintiff stated that he has been seeing Dr. Jung for two years, every three months. Id. He stated that Dr. Brown is physiatrist and does physical and mental rehabilitation. Id. He indicated that he has been seeing Dr. Brown for three years and last saw him on April 20, 2004. Id. He stated that Dr. Brown does not prescribe Plaintiff's medications because of him insurance. Id.

Plaintiff stated that he takes methocarbamol, which the ALJ referred to as Robaxin, "[w]hen things get extremely bad," and it "knocks [him] out." (TR 301). He stated that he takes this medication about twice a week on average. Id. He reported taking it three nights before the hearing.

Id.  He stated that he also takes aspirin for blood thinning.  Id.  He stated that all his medications including Darvocet make him sleepy even if he does not take the Robaxin.  (TR 301).  He stated that when he takes Darvocet, he is not alert and if he is "just setting there, [she will] doze off."  (TR 302-03).

Plaintiff testified that he takes naps twice a day for twenty to thirty minutes at a time.  (TR 303).  He stated that he does not sleep exceptionally well and will get up to take pain medication and then lay down again.  Id.  He reported that he goes to bed at about ten or ten-thirty in the evening and wakes at eight to take his medications.  (TR 305).

He stated that he does not do much in the form of household chores.  Id.  He indicated that he might pick up little things and straighten up, but cannot vacuum due to lower back pain associated with the pushing and pulling.  (TR 306).  Plaintiff stated that he is not a surgical candidate because his back is not "surgically repairable."  (TR 303).  He stated he was in physical therapy about a year or so ago. Id.

He stated that he has never tried mopping or sweeping and only has carpeting throughout his house.  (TR 306).  He stated that he tried doing laundry, but had difficulty pulling wet clothes out of the washer, so he has his son do it for him.  Id.  He indicated that his son comes over at least three times a week and helps him out.  (TR 306-07, 308).  He stated that he also has a "lady friend" who does his shopping, cooking, and dishes.  (TR 307).  He testified that she comes over every day and also helps with other chores.  (TR 307, 308).

Plaintiff reported that he is able to drive alone, but his "reflexes aren't what they used to be." (TR 307).  He stated that he walks through the grocery store a couple times a week, and his "lady friend" goes with him, but she picks up the heavy items.  Id.  He stated that he sometimes mows the lawn, but only with his brother-in-law's bigger lawnmower.  Id.  He explained that his smaller riding

lawnmower vibrates, and he is unable to use a push mower.  Id.  He stated that he last mowed the lawn a month prior to the hearing, and the previous year, he did not mow the lawn at all.  (TR 308).  He stated that last year he did not mow the lawn due to his heart problems.  Id.

Plaintiff testified that he does not smoke.  Id.  He stated that he tries to keep busy reading or watching television.  Id.  He stated that he has a grandson, but he does not spend time doing activities with him because his grandson is only one year old.  Id.  He stated that he does not babysit, nor does he participate in church, clubs, or organizations.  (TR 309).

He stated that he last hunted in November prior to the hearing.  Id.  He explained that he hunts, carrying his own gun, with four or five friends for two or three hours a at a time; and he stated that they take care of him and make him comfortable.  Id.  He also stated that he shoots a game of pool on a biweekly basis with a friend.  Id.  He stated that he "can normally shoot a couple of games before [he has] to sit down."  (TR 310).  He stated that two games typically take fifteen to twenty minutes.  Id.  He testified that he used to ride a Goldwing motorcycle, but he has not been riding since his accident.  Id.  He stated that he does not camp or fish.  Id.

He testified that he also has diabetes and is "non-insulin-dependent right now."  (TR 303).  He stated that he watches what he eats and has been doing well since surgery.  Id.

Plaintiff stated that he had a cysts removed from his right testicle June 16, 2003, and has scar tissue which makes his right testicle feel "un-normal."  (TR 304).  He stated that he was told prior to the surgery that this would be the result and has not seen anyone for it since.  Id.  He stated that he has pain associated with the cyst removal even when he is seated.  (TR 305).  He stated that it is three on a pain scale of one to ten.  Id.

Plaintiff testified that Dr. Brown has limited him to lifting twenty-five pounds due to his back problems.  (TR 310-11).  He stated that he can lift "[a] gallon of milk sometimes."  (TR 310).  He

stated that if he lifts a gallon of milk the wrong way, he feels a sharp pain. (TR 312). Since his bypass surgery, Dr. Jones limited him to twenty pounds. (TR 310-11). He stated that his original family physician, Dr. Page, also limited him to lifting twenty-five pounds or less. (TR 311). Plaintiff stated that he can sit about twenty minutes without a break and then has to stand. Id. He stated that he can be on his feet for thirty minutes without a break. Id.

He stated that when he climbs stairs, he always lifts his left leg first, as he cannot bear all his weight on his right leg anymore, because he has a "Charlie horse." (TR 312). He stated that the most comfortable position for him is to lie flat on his back with heat to alleviate his pain. (TR 312-13). He reported that some days he does not have to lie down at all, and other days he lies down three or four times a day for ten or fifteen minutes. (TR 313). In addition, he stated that there are times when he lies down in bed for an entire day. Id. He stated that he has low energy and feels "numb" during the day, and does not feel like doing anything. Id.

Plaintiff stated that he saw a vocational rehabilitation therapist on April 20, 2004. (TR 313-14). He stated that he had to go see a vocational therapist to get his $264 a month benefits. (TR 314). He stated that the therapist helped him write a resume, but did not treat his physical problems at all. Id.

Plaintiff testified that he never did light work after August 8, 2000. (TR 317). He stated that he last worked as a home care technician from April 1994 until August 2000 in private homes. Id. He stated that he was trained for the job in 1982 and started out working with mentally and physically handicapped people through the state for thirteen years. Id. He stated that he began working with the visiting nurses as well, then stopped the state work. Id.

Plaintiff testified that he was never certified as a nurse's aide, but received home health care training through the state for about thirty days. (TR 317-18). He stated that he worked on his feet

except for the time he spent driving from home to home. (TR 318). He stated that he was required to lift patients weighing up to a "couple hundred pounds." Id. He stated that he also lifted patients at his previous job with the state. Id.

### B.     MEDICAL EVIDENCE

Examination of the parties' cross-motions for summary judgment reveals that an additional recitation of the Plaintiff's medical evidence would be repetitive. The pertinent record medical evidence relied upon by this Court is fully articulated in the Analysis.[2]

### C.     VOCATIONAL EXPERT'S TESTIMONY

Pauline McEachin, a vocational expert [VE], testified at the hearing. (TR 319-27). She classified Plaintiff's past work as medium to heavy and unskilled. (TR 319). The ALJ presented a hypothetical question to the VE, based on an October 11, 2002 assessment, in which a claimant with Plaintiff's age, education, and work experience could

> lift 20 pounds occasionally - - occasionally means up to one-third of an eight-hour day - - 10 pounds frequntly. Sitting is unlimited; standing's unlimited, assuming normal breaks; however, all postural limitations are limited to occasional - - includes ramps, stairs, balancing, stooping. Stooping means bending from the waist with the legs straight - - kneeling, crouching, crawling. However, I would change ladders, ropes, and scaffolds to never, given his testimony about the medications. . . . avoid concentrated exposure to fumes, odors, dust, gases. Avoid concentrated exposure to hazardous machinery, unprotected heights.

(TR 320-21). The VE testified that under these limitations, Plaintiff would not be able to perform his past relevant work. (TR 321). The ALJ asked whether there would be any other sedentary work available under the hypothetical. Id. The VE testified that the following light and unskilled jobs existed: information clerk, 1,700 positions; visual inspector, 2,200 positions; and sorter,1,300 positions. Id. Further, the VE stated that the following unskilled sedentary jobs also existed under the

---

[2]See Subpart E, infra, at 10.

hypothetical: video surveillance monitor, 2,000 positions; ID clerk, 1,100 positions; and inspector, 3,500 positions. (TR 321-22).

The ALJ then began to asked the VE another hypothetical[3] assuming Plaintiff's testimony at the hearing was entirely credible. (TR 325). The VE testified that there would be no jobs for Plaintiff under that assumption. Id.

Plaintiff's counsel then questioned the VE. (TR 325-26). Plaintiff's counsel asked the VE what the maximum number of days is that a person can be out of work per month. (TR 325). The VE stated that although it varies from company to company, with more than two or three days off per month, a person would have difficulty maintaining employment. Id. Plaintiff's attorney asked the VE what percent of time an individual needs to stay focused or on task to maintain competitive employment. Id. The VE also stated that "[i]t ranges anywhere from 50 percent up until if you have like production type of work, 70 to 75 percent." (TR 326).

Plaintiff's counsel asked whether a "person limited to lifting 10 pounds maximum and need[ing] a sit/stand option at will, [who] could only occasionally push or pull" could do any light or sedentary jobs. Id. The VE stated that there would be some light jobs, but if the person was "standing less than four out of eight hours, then by definition it would be sedentary work." Id. The VE testified that there were no jobs based on the ALJ's third hypothetical (which assumed Plaintiff's testimony was credible), because "during any given week, [Plaintiff] might have two or three days where he's lying down three to four times a day with a heating pad for 10 to 15 to 20 minutes." (TR 327).

---

[3]The ALJ began to ask a second hypothetical "based on 15F, two, which was completed April 20, 2004, the physical capacities assessment evidently done by Dr. Brown." (TR 322). The ALJ stated that he found this assessment confusing and was not familiar with the form used by Dr. Brown. (TR 322-24).

9

**D.     ALJ'S CONCLUSIONS**

After reviewing the testimony presented at the hearing and the medical evidence in the record, the ALJ found that "[t]he medical evidence establishes that the claimant has severe cardiac and low back impairments" (TR 21), impairments that are severe within the meaning of the Regulations, but that he does not have an impairment or combination of impairments set forth in Appendix 1, Subpart P, Regulations No. 4. (TR 18, 21). The ALJ found Plaintiff's testimony partially credible. (TR 19, 22). He determined that Plaintiff had the RFC to perform some light and sedentary work. (TR 21, 22). Thus, the ALJ concluded that Plaintiff is not eligible for disability. (TR 23).

**E.     ANALYSIS**

Plaintiff advances two claims in his Motion for Summary Judgment. Plaintiff's Motion argues that the ALJ's decision is not supported by substantial record evidence because (1) the ALJ's questions to the VE did not accurately reflect Plaintiff's RFC; and (2) the ALJ did not comply with the mandates of SSR 00-4p.[4] In response, Defendant's Motion for Summary Judgment contends that these aspects of the ALJ's decision are supported by substantial evidence.[5] The matter is now ready for decision.

**1.     Standard of Review**

This Court's review of the ALJ's conclusions is limited. The findings of the ALJ regarding Plaintiff's disabled status are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g) (2006). Substantial evidence means such evidence as a reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1971). It is more than a scintilla of evidence, but less than a preponderance of evidence. Brainard v. Sec'y of Health and Human Servs.,

---

[4]Plaintiff's Motion for Summary Judgment and Brief filed November 28, 2005, (hereinafter "Plaintiff's Brief") at pages 6-9.

[5]Defendant's Motion for Summary Judgment and Brief filed February 17, 2006, (hereinafter "Defendant's Brief") at pages 8-15.

889 F.2d 679, 681 (6th Cir. 1989). This standard presupposes that there is a "zone of choice" within which the ALJ may make a decision without being reversed. Felisky v. Bowen, 35 F.3d 1027, 1035 (6th Cir. 1994). Even if the court might arrive at a different conclusion, an administrative decision must be affirmed if it is supported by substantial evidence. Mullen v. Bowen, 800 F.2d 535, 545 (6th Cir. 1986). Finally, consideration of the whole record does not mean that the ALJ must mention or comment on each piece of evidence submitted. Black v. Apfel, 143 F.3d 383, 386 (8th Cir. 1998). Applying these standards, I will analyze each of Plaintiff's claims.

### a. Hypothetical

Plaintiff argues that the ALJ relied on VE testimony that was in response to a hypothetical that did not accurately portray his impairments.[6] Specifically, Plaintiff points out that

> [a]t the hearing, Mr. Luce testified that probably the heaviest thing I pick up is like a gallon of milk, and if I grab that the wrong way, I feel it definitely, sharp pain. But if I'm careful and pick it up slow and ease into it, Im fairly - - fine with it. (Tr. 312) Mr. Luce also testified that the longest he can be on his feet without a break is about half an hour. (Tr. 311)
> Exhibit 15F2 limits Mr. Luce to a maximum of 10 pounds and only occasionally sitting, standing and walking, which would be consistent with Mr. Luce's testimony at the time of trial. (Tr. 188)
> Based on Exhibit 15F2 and Mr. Luce's testimony, Mr. Luce would be limited to a restricted range of sedentary work.[7]

Thus, Plaintiff argues that the ALJ should have limited him to a restricted range of sedentary work.[8] Recently, the Sixth Circuit clarified what a hypothetical should include:

> In Foster v. Halter, 279 F.3d 348 (6th Cir. 2001), we stated that a hypothetical question need only reference all of a claimant's limitations, without reference to the claimant's medical conditions. Foster, 279 F.3d at 356. In Varley v. Sec'y of Health

---

[6]Plaintiff's Brief at pages 6-8.

[7]Plaintiff's Brief at pages 7-8.

[8]Plaintiff's Brief at page 8.

11

and Human Servs., 820 F.2d 777 (6th Cir. 1987), a case cited in Howard, we likewise determined that a vocational expert need only "take[ ] into account plaintiff's limitations." Varley, 820 F.2d at 780.

Webb v. Comm'r of Soc. Sec., 368 F.3d 629, 633 (6th Cir. 2004). "It is well established that an ALJ may pose hypothetical questions to a vocational expert and is required to incorporate only those limitations accepted as credible by the finder of fact." Casey v. Sec'y of Health and Human Servs., 987 F.2d 1230, 1235 (6th Cir. 1993) (citations omitted). Plaintiff does not challenge the ALJ's credibility findings. In addition,

> after listening to what [Plaintiff] said on the witness stand, observing [his] demeanor, and evaluating that testimony in the light of what appears in the written medical records, the ALJ concluded, rightly or wrongly, that [Plaintiff] was trying to make his symptoms and functional limitations sound more severe than they actually were. It is the ALJ's job to make precisely that kind of judgment.

Gooch v. Sec'y of Health and Human Servs., 833 F.2d 589, 592 (6th Cir. 1987). Further, [t]he "ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference," and should not be disturbed. Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 531 (6th Cir.1997) (citation omitted).

As in Maziarz v. Sec'y of Health & Human Servs., 837 F.2d 240, 247 (6th Cir. 1987),

> [t]he vocational expert merely responded to several hypothetical questions which presumed different physical restrictions allegedly placed on claimant. The vocational expert did not determine what restrictions claimant in fact had. Rather, it was the ALJ's function to first determine what medical restrictions claimant was under and how they affected his residual functional capacity, and then to determine whether the vocational expert had identified a significant number of jobs in a relevant market given these restrictions.

See also, Stanley v. Sec'y of Health and Human Servs., 39 F.3d 115, 118-19 (6th Cir. 1994) ("the ALJ is not obliged to incorporate unsubstantiated complaints into his hypotheticals." (citation omitted)).

As far as the RFC is implicated in Plaintiff's argument,[9] in <u>Webb v. Comm'r of Soc. Sec.</u>, 368 F.3d 629, 632 (6th Cir. 2004), the Court explained how the RFC and hypothetical work together.

> [W]hile the [residual functional capacity] should focus on Howard's abilities or, in other words, what Howard can and cannot do, the hypothetical question should focus on Howard's overall state including Howard's mental and physical maladies. . . The vocational expert's testimony is directed solely to whether, given a claimant's age, experience, and education, along with the ALJ's assessment of what she "can and cannot do," there exist a significant number of employment opportunities for her in the regional and national economies.

Further,

> [i]n <u>Foster v. Halter</u>, 279 F.3d 348 (6th Cir. 2001), we stated that a hypothetical question need only reference all of a claimant's limitations, without reference to the claimant's medical conditions. <u>Foster</u>, 279 F.3d at 356. In <u>Varley v. Sec'y of Health and Human Servs.</u>, 820 F.2d 777 (6th Cir. 1987), a case cited in <u>Howard</u>, we likewise determined that a vocational expert need only "take[ ] into account plaintiff's limitations." <u>Varley</u>, 820 F.2d at 780. . . .
>
> The vocational expert is not expected to evaluate the claimant's medical conditions in making this determination. Indeed, vocational experts are not required to have any medical training, so any evaluation of medical evidence they perform would be outside their area of expertise. Accordingly, in light of the facts present in Howard, this circuit's prior case law, and the role of a vocational expert under the social security regulations, we do not read Howard to hold that hypothetical questions to vocational experts are required to include lists of claimants' medical conditions.

Webb, 368 F.3d at 633.   The issue in this case centers on the ALJ reliance on "Social Security Administration medical source statement dated October 11, 2002 (TR 18)," rather than Exhibit 15F2, dated April 20, 2004 (TR 147-55, 188). [10]  As Defendant correctly points out,

> [a]s the ALJ pointed out, the form referenced by Plaintiff, the form dated April 20, 2004, has an illegible signature (Tr. 20, referring to Tr. 187). The ALJ pointed out that, at the hearing, he asked Plaintiff if he knew who had completed this form, and Plaintiff

---

[9] Plaintiff's Brief at page 8.

[10] Plaintiff's Brief at page 8; Defendant's Brief at pages 9-12.

13

testified that he was not sure if was completed by Dr. Brown or a vocational rehabilitation person named Kevin Gortney, who is not a physician and has never examined Plaintiff (Tr. 20; see Tr. 314). Indeed, the cover letter from Plaintiff's attorney law firm to the ALJ indicates that the note was from Mr. Gortney of Vocational Rehabilitation (Tr. 187). At the hearing, Plaintiff first stated that the form was completed by Mr. Gortney, and then stated that it was completed by Dr. Brown after the ALJ questioned Mr. Gortney's qualifications to set forth a medical opinion (see Tr. 313-15). The ALJ also stated in his decision that whoever completed the form indicated that he had not examined Plaintiff in the past year, and that would eliminate Dr. Brown (Tr. 20). The ALJ also noted that the definitions on the form were not consistent with Social Security law. The ALJ was not required to credit the limitations on this form.[11]

Specifically, the ALJ stated the following:

> Great weight is being given to the Social Security Administration medical source statement date October 11, 2002 completed by a reviewing physician. The claimant is limited to lifting and carrying of 20 pounds occasionally and 10 pounds frequently. It is reported that, in an eight hour workday, the claimant can stand and/or walk for a total of about six hours and can sit for a total of about six hours. Pushing and pulling are reported to be unlimited, other than as indicated for lifting and carrying. It is reported that the claimant can occasionally climb ramps/stairs, climb ladders/ropes/scaffolds, balance, stoop, kneel, crouch, and crawl. No other limitations are placed on the claimant (Exhibit 9F). This medical source statement is very consistent with the evidence of coronary artery disease and low back pain before and *after*[12] October 11, 2002. It is also consistent with functional limitations of the claimant's treating cardiologist Dr. Saquib, the claimant's treating orthopedist, Dr. Brown. Both Dr. Saquib and Dr. brown limit the claimant to no lifting over 20 pounds, combining the coronary artery disease and low back pain limitations, and that receives controlling weight (Exhibit 28F, p.4). Although Dr. Brown does not limit the claimant beyond the 20 pound limit, it is consistent with the claimant's degree of low back pain that all postural activities are reduced to occasional (Exhibit 9F, p.4). The above limitations as reported by all three physicians are consistent with the performance of light work.

---

[11]Defendant's Brief at pages 11-12.

[12]Plaintiff also alleges that the ALJ failed to consider Exhibits dated after the October 11, 2002, SSA medical source report. Plaintiff's Brief at page 8. However, the ALJ clearly stated that he was considering records after that date and discussed same. (TR 18-20). Thus, there is no error relating to same. In addition, on October 9, 2003, a year after the SSA medical source report, Dr. Brown stated "[w]e will continue the 25-pound restriction." (TR 185). Further, his discharge instructions on February 1, 2003, give no lifting restrictions. (TR 273).

14

(TR 18-19) (emphasis added).  As Defendant indicates,[13] the ALJ went on to discuss why he rejected the form upon which Plaintiff relies.[14]

> There is a physical capacities assessment dated April 20, 2004 (Exhibit 15F, p.2).  The signature is illegible.  The claimant was not sure if it was filled out by Dr. Brown or a vocational rehabilitation person named Kevin Gortney, who is not a physician and has never examined the claimant (Exhibit 15F, p.1).  Whoever filled out this form indicated that he or she had not examined the claimant within the past 12 months up to April 20, 2004, which would eliminate Dr. Brown.  ***As aforesaid, Dr. Brown, on April 20, 2004, only limited the claimant to no lifting over 20 pounds (Exhibit 28F, p.4).***  The definitions on the form in question are also inconsistent with the ones used in Social Security disability cases.  "Sometimes" is defined as continuously up to two hours or occasionally up to six hours.  No one understood what those definition meant.  For these reasons, no significant weight will be placed on this assessment

(TR 20) (emphasis added).

The record supports the ALJ's assessment of the conflicting forms. Further, the page preceding the form on which Plaintiff's relies on states, "Enclosed please find the medical note form Kevin Gortney (Voc Rehabilitation), in regards to the above matter." (TR 187).  This page is a letter from Plaintiff's attorneys and clearly shows that the physical assessment dated April 20, 2004, which limits Plaintiff to lifting no more than ten pounds, is not the opinion of any physician of record.  Thus, Plaintiff has not established that the ALJ's decision was unsupported by substantial evidence.

### b. SSR 00-4p

Plaintiff also argues that the ALJ failed to comply with the mandates of SSR 00-4p by failing to establish the validity of the VE.[15]   SSR 00-4p specifically provides:

---

[13] Defendant's Brief at page 12.

[14] Plaintiff's Brief at page 8.

[15] Plaintiff's Brief at page 9.

15

> When a VE or VS provides evidence about the requirements of a job or occupation, the adjudicator has an affirmative responsibility to ask about any possible conflict between that VE or VS evidence and information provided in the DOT. In these situations, the adjudicator will:
> Ask the VE or VS if the evidence he or she has provided conflicts with information provided in the DOT; and
> If the VE's or VS's evidence appears to conflict with the DOT, the adjudicator will obtain a reasonable explanation for the apparent conflict.

The undersigned acknowledges that the ALJ failed to ask the VE whether there was any inconsistency between the testimony and the Dictionary of Occupational Titles [DOT].

> There are few decisions interpreting SSR 00-4p. However, those which have considered an ALJ's obligations under that ruling suggest that an ALJ's failure to carry its burden at this step is reversible error. See Anschutz v. Barnhart, 212 F. Supp. 2d 1077, 1085-1086 (S. D. Iowa 2002)(Commissioner failed to meet burden of proving that jobs existed, where VE did not refer to the DOT and, therefore, did not identify specific jobs that could be performed.). Steward v. Barnhart, 44 Fed. Appx. 151 (9th Cir. 2002)(unpublished)(Reversible error for ALJ to rely upon jobs listed by VE that required transferable skills, where the ALJ found that the claimant did not have transferable skills.); Gallant v. Massanari, 2001 WL 912406 (D. Me. 2001)(Reversible error for ALJ to rely upon jobs erroneously listed by VE that were inconsistent with Plaintiff's RFC.).

Teverbaugh v. Comm'r of Soc. Sec., 258 F. Supp. 2d 702, 706 (E. D. Mich. 2003).  However,

> [i]n Conn v. Secretary of Health & Human Services, 51 F.3d 607, 610 (6th Cir. 1995), the court held that the ALJ and consulting vocational experts are not bound by the Dictionary in making disability determinations because the Social Security regulations do not obligate them to rely on the Dictionary's classifications.

Wright v. Massanari, 321 F.3d 611, 616 (6th Cir. 2003).  Further, an ALJ is not required to rely on the DOT, but can rely on the VE's testimony, even when it is inconsistent with the DOT. Conn v. Sec'y of Health and Human Servs., 51 F.3d 607, 610 (6th Cir. 1995).  The undersigned suggests that

16

any potential conflicts in the present case results in harmless error because, as Defendant points out, Plaintiff points to absolutely no conflict between the VE's testimony and the DOT.[16]

>Defendant correctly points out that

>>A cursory review of the DOT shows that jobs identified by the VE were consistent with the DOT. See, e.g., DICOT 237.367-018 ( information clerk - light); DICOT 222.687-022 (sorter-- light); DICOT 205.362-02 (identification clerk --sedentary). Any error by the ALJ in failing to ask the VE if his testimony was consistent with the DOT was harmless. Fisher v. Bowen, 869 F.2d 1055, 1057 (7th Cir. 1989) ("No principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result."); Berryhill v. Shalala, No. 92 5876, 1993 WL 361792 (6th Cir. Sept. 16, 1993):

>>>While agency decisions must be sustained, if at all, on their own reasoning, . . . this principle "does not mechanically compel reversal 'when a mistake of the administrative body is one that clearly had no bearing on the procedure used or the substance of [the] decision reached.'" Where a subsidiary finding is unfounded, the court will remand the case to the agency for further consideration only if "the court is in substantial doubt whether the administrative agency would have made the same ultimate finding with the erroneous finding removed from the picture. . . ."

>Id. at *7 (citations omitted).[17]

Thus, the ALJ's did not err in failing to confirm that the VE's testimony was consistent with the DOT.

---

[16]Defendant's Brief at page 14.  See Rutherford v. Barnhart, 399 F.3d 546, 556-57 (3rd Cir. 2005) (declining to reverse for lack of compliance with SSR 00-4p where the VE provided only examples of jobs and not an exhaustive list, where inconsistencies were not present as to each of the jobs identified by the VE, and where the existing inconsistencies were not egregious enough).

[17]Defendant's Brief at page 14.

### III.     CONCLUSION

For the reasons stated, I find that the ALJ's decision denying Plaintiff benefits is substantially supported in the record.  Accordingly, I respectfully recommend that the Court **DENY** Plaintiff's Motion for Summary Judgement, **GRANT** Defendant's Motion for Summary Judgment, and enter judgment for Defendant Commissioner.

Pursuant to Fed. R. Civ. P. 72(b) and 28 U.S.C. § 636(b)(1), the parties are hereby notified that within ten days after being served with a copy of the recommendation they may serve and file specific, written objections within ten days after being served with a copy thereof.  The parties are further informed that failure to timely file objections may constitute a waiver of any further right of appeal to the United States Court of Appeals.  United States v. Walters, 638 F.2d 947 (6th Cir. 1981).

In accordance with the provisions of Fed. R. Civ. P. 6(b), the court in its discretion, may enlarge the period of time in which to file objections to this report.

                                                  s/Wallace Capel, Jr.
                                                  **WALLACE CAPEL, JR.**
                                                  **UNITED STATES MAGISTRATE JUDGE**

**Dated:**     August 9, 2006

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**

**CERTIFICATE OF SERVICE**

I hereby certify that on August 9, 2006, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to the following: Janet L. Parker and Mike E. Lupisella,

and I hereby certify that I have mailed by United States Postal Service the paper to the following non-ECF participant(s): Social Security Administration, Office of the Regional Counsel, 200 W. Adams Street, 30th Floor, Chicago, Illinois 60606.

                                  s/James P. Peltier
                                  United States District Court
                                  Flint, Michigan 48502
                                  810-341-7850
                                  E-mail: pete_peltier@mied.uscourts.gov